PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:26-cr-65 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JOSE ROBY *et al.*, | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |

For the reasons stated herein, the Court rejects Defendant Ruby Roby's conflict-of-interest waiver (ECF No. 33-6), removes Attorney Michael Marein, and, in accordance with Federal Rule of Criminal Procedure 44(c)(2)[1], appoints separate, independent legal counsel for Ms. Roby's defense in these proceedings.[2]

**I.**

**A.**

On February 4, 2026, a federal grand jury returned a five-count indictment charging Defendant Jose Roby with several drug trafficking and weapons offenses, along with conspiracy to launder the proceeds of his drug trafficking. ECF No. 1. Count Five of the indictment also

[1] As explained *infra*, Rule 44(c)(2) mandates how a trial court must respond to joint representation. It unequivocally charges that "the court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest *is likely to arise*, the court must take appropriate measures to protect each defendant's right to counsel." (Emphasis added.)

[2] The matter is fully briefed, and the Court held a final hearing on August 11, 2026. Min. of Proc. [non-document] 8/11/2026.

charged Mr. Roby's mother, Ruby Roby, with conspiracy to launder the proceeds of Mr. Roby's drug trafficking. ECF No. 1. If convicted, several of the charges against Mr. Roby require mandatory terms of incarceration, including the possibility of a lifetime of incarceration. Ms. Roby, a septuagenarian, faces up to twenty years of incarceration if she is convicted of Count Five.

Attorney Steven Bradley, founding partner of Marein & Bradley, LLC, entered an appearance on behalf of Mr. Roby on February 18, 2026. ECF No. 7. On that same day, Michael Marein, another attorney with the same firm, entered an appearance on behalf of Ms. Roby. ECF No. 6. Joint representation occurs when two defendants are charged together, in accord with Rule 8(b), and represented by the same counsel or counsel who are associated in law practice. *See* Rule 44(c)(1). The Robys are jointly represented by the law firm of Marein & Bradley.

Concerned that the defendants' joint representation created actual and/or the potential for serious conflicts of interest, the Court conducted a pretrial conference on April 9, 2026. At the conclusion of that conference, the Court ordered defense counsel to show cause why no actual and/or potential for serious conflicts of interest exists or, alternatively, to present the appropriate documentation indicating defendants gave their informed consent and waived any actual or potential conflicts, consistent with the Ohio Rules of Professional Conduct. Min. of Proc. [non-document], Final Pretrial Conference, 4/9/2026.

Defense counsel responded that there were no actual or potential conflicts of interest because Mr. Roby's and Ms. Roby's defense strategies were "compatible and identical." ECF No. 33. Defense counsel also produced executed conflict-of-interest waivers for both Mr. Roby and Ms. Roby. J. Roby Waiver, ECF No. 33-5; R. Roby Waiver, ECF No. 33-6.

Notwithstanding counsel's assessment and the waivers, the Court remained concerned that Ms. Roby was not adequately advised regarding the potential dangers that may arise from joint representation. *See* ECF No. 37 at PageID #: 187 (finding that because the affidavit attesting to the private consultation with Ms. Robey was incomplete, the Court presumed the consultation was also incomplete). Accordingly, on May 26, 2026, the Court appointed Attorney Wesley Dumas, Sr. as Independent Counsel to privately consult with Ms. Roby and to advise the Court of whether any actual conflict and/or potential for serious conflicts of interest existed or were likely to arise due to the joint representation of Ms. Roby and her co-defendant son. Attorney Dumas was instructed to report his assessment to the Court. ECF No. 37.

**B.**

On July 13, 2026, Attorney Dumas began his report by assessing that the case is "rife with potential conflicts of interest." He opined that the potential conflicts may ripen into actual conflicts at any stage of the proceedings, including plea negotiations, trial, and sentencing. He concluded that proceeding with separate, independent legal counsel is the appropriate course to ensure that Ms. Roby is served by effective counsel. ECF No. 44.

To prepare his report, Attorney Dumas, *inter alia*, obtained and reviewed discovery from the Government along with the Government's proposed sentencing guideline calculations for Ms. Roby. Attorney Dumas also "[m]et with [A]ttorney Steven [] Bradley to ascertain the nature of the possible defenses at this point in the proceedings," and met with Ms. Roby in person. ECF No. 44 at PageID #: 250. Acknowledging that Ms. Roby's current defense strategy is aligned with that of her co-defendant son, Attorney Dumas noted that continuing with joint representation remains "rife" with potential conflicts if that strategy fails. ECF No. 44 at PageID #: 255. Pointing to the mother-son relationship between Ms. Roby and Mr. Roby, Attorney

Dumas explained that emotional ties and familial fidelity may impede the integrity of joint representation. He suggested that one defendant may agree to a detrimental defense posture to better protect the other defendant. ECF No. 44 at PageID #: 255. Attorney Dumas also determined that Ms. Roby appears to understand the risks posed by the dilemma of continuing with joint representation but, at present, wants to proceed with her current counsel. Importantly, Ms. Roby remains open to considering retaining separate counsel. ECF No. 44 at PageID #: 256.

**II.**

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. const. amend. VI. The purpose of this amendment "is simply to ensure that criminal defendants receive a fair trial." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)); *see* *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (citing *Strickland*, 466 U.S. at 658–86) ("It follows that assistance which is ineffective in preserving fairness does not meet the constitutional mandate."). Although the Sixth Amendment recognizes a defendant's right to retain their preferred counsel, "the essential aim of the Amendment" may usurp such preferences, especially when retained counsel has an actual or potential for a serious conflict of interest.[3] *Wheat*, 486 U.S. at 159; *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) (recognizing that while there is a presumption favoring a

[3] According to Restatement (Third) of the Law Governing Lawyers § 121 (2000), a conflict of interest exists if "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." *See* Ohio. R. Prof. Conduct 1.7. The potential for a conflict of interest exists if the defendant's interests *could* place the attorney under inconsistent duties in the future. *United States v. Farmer*, No. 1:14CR362, 2015 WL 196027, at *4 (N.D. Ohio Jan. 14, 2015) (Lioi, J.) (internal citations and quotation omitted) (emphasis added).

defendant's choice in counsel, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.").

Such conflicts may arise from joint representation, like the one in this case. As indicated earlier, Fed. R. Crim. P. 44(c) dictates that joint representation occurs when two or more defendants have been charged jointly and are represented by the same attorney or counsel who are associated in law practice.[4] Fed. R. Crim. P. 44(c)(1). Although joint representation does not *per se* violate the Sixth Amendment's guarantee to assistance of counsel, *see* *Hall*, 200 F.3d at 965 (citing *Thomas v. Foltz*, 818 F.2d 476, 482 (6th Cir. 1987)), the Supreme Court repeatedly cautions against such arrangements. *See* *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) (intoning that "[j]oint representation of conflicting interest is suspect because of what it tends to prevent the attorney from doing . . . not only at trial but also as to possible pretrial plea negotiations and in the sentencing process[.]"); *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (recognizing the potential for a conflict of interest to arise when two partners of the same firm represent co-defendants, particularly "when the two lawyers cooperate with one another in planning and conduct of trial strategy."). Both the Supreme Court and the Sixth Circuit hold that trial courts have a duty "to inquire adequately into a trial counsel's conflict of interest if it knows or reasonably should know that a particular conflict exists." *Moss v. United States*, 323 F.3d 445, 471 (6th Cir. 2003) (citing *Holloway*, 435 U.S. at 483–84 and *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)).

---

[4] Ohio Professional Conduct Rule 1.10 similarly provides that lawyers associated in a firm shall not represent a client "when the lawyer *knows* or *reasonably should know* that any one of [the firm's lawyers] practicing alone would be prohibited from doing so by Rule 1.7 or 1.9[.]" Ohio R. Prof. Conduct 1.10(a) (emphasis in original).

Consistent with this duty, Fed. R. Crim. P. 44(c)(2) requires courts to inquire about the propriety of joint representation and, "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court ***must*** take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2) (emphasis added); *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). Appropriate measures include obtaining defendant's waiver of the right to conflict-free counsel or, alternatively, appointing separate counsel for future proceedings. Fed. R. Crim. P. 44(c) Advisory Committee Notes (1979 Amendment); *United States v. Osborne*, 402 F.3d 626, 631 (6th Cir. 2005).

The Sixth Circuit recognizes a defendant's right to knowingly, intelligently, and voluntarily waive their "right to a conflict-free counsel." *United States v. Collins*, 434 F. App'x 434, 441 (6th Cir. 2011) (citing *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991)). Nevertheless, the Court need not accept such a waiver if there is an actual conflict or "a showing of a serious potential for conflict." *Hall*, 200 F.3d at 965 (quoting *Wheat*, 486 U.S. at 159). Trial courts are granted "substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.

Attorney Dumas' report and analysis reasonably indicates that there appears to be no actual conflicts, that Ms. Roby understands the dangers of proceeding with joint representation, and that she has knowingly, intelligently, and voluntarily waived any conflicts of interest that may arise. More importantly, however, the report also indicates that there are many potential

conflicts that may ripen to actual conflicts throughout this case such that separate and independent counsel for Ms. Roby is appropriate. The Court agrees.[5]

Attorney Dumas' report is helpful here. He reported that he discussed "the nature of the possible defenses at this point in the proceedings" only with Mr. Bradley (Jose Roby's attorney). It is not surprising that Attorney Dumas would interview counsel for the co-defendant with whom any serious conflict would exist, it is telling that Attorney Bradley was able to articulate strategies for both defendants without Attorney Marein's (Ms. Roby's counsel's) input. Attorney Bradley's articulation illustrates the lack of independence between Ms. Roby's representation and that of her co-defendant son. Although Ms. Roby and Mr. Roby's defense strategies currently align, Attorney Dumas aptly predicts that this alignment may change at any stage of the proceedings, including, but not limited to, plea negotiations, trial, or sentencing, especially if the defense strategies falter or fail. As noted in his report, one defendant may agree to a defense position that is detrimental to them out of a sense of family loyalty. That is why independent, conflict-free counsel is necessary to effectively advocate for each defendant's interests. As situated, there is no good cause to believe that independence exists or that no conflict of interest is likely to arise.

Moreover, Attorney Dumas correctly discerned that the risk of a potential conflict evolving into an actual conflict exists at all stages of the proceedings, including plea

---

[5] While not conceding there are actual or potential conflicts, defense counsel acknowledges two foundational maxims: (1) "attorneys in the same firm are to be treated as one attorney for purposes of conflict analysis" and (2) "there are times when the presumption of a right to counsel of choice must yield to the danger that the defendant has been, or is being, represented by counsel who is so conflicted by virtue of other considerations that the Sixth Amendment right to effective assistance of counsel is deprived." *See* ECF No. 33 at PageID #: 118 and ECF No. 41 at PageID #: 232.

negotiations, trial, and sentencing, in which case, the Court would then need to appoint new counsel under Fed. R. Crim. P. 44. *See* *Wheat*, 486 U.S. at 162 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)) ("When a trial court finds an actual conflict of interest . . . the court should not be required to tolerate an inadequate representation of a defendant."). Independent Counsel shared that the Government's sentencing guidelines range calculations suggest that Ms. Roby may be subject to incarceration between 57 and 71 months before any downward departures, variances, or other adjustments (for which she may be eligible). That range is not an insignificant term of incarceration for any defendant, but especially not for one in her late seventies. Given the possible penalties she faces, if convicted, it is imperative to ensure that Ms. Roby is adequately represented at all stages in this matter.

After reviewing the record, including Attorney Dumas' report, the requirements of Rule 44(c), and applicable case law, the Court concludes that there is a potential for serious conflicts of interest to arise from the joint representation by Marein & Bradley, LLC, of both defendants; and, as a result, that there is good cause to believe those potential conflicts may ripen to actual conflicts. Fed. R. Crim. P. 44(c)(2); *see* *Wheat*, 486 U.S. at 162 (quoting *Dolan*, 570 F.2d at 1184). Having concluded that there is a potential for a serious conflict of interest to arise from the joint representation arrangement, the Court rejects Ms. Roby's conflict-of-interest waiver and will not permit her to proceed with her current counsel. *See* Fed. R. Crim. P. 44(c)(2). To protect Ms. Roby's Sixth Amendment right to effective counsel, the Court shall appoint separate, independent counsel to represent her in these criminal proceedings.

**III.**

Based on the mandate of Fed. R. Crim. P. 44(c)(2), the applicable case law, and the record before the Court, Attorney Dumas' Notice of Independent Counsel Report (ECF No. 44), the Court makes the following findings:

Because a serious potential conflict of interest is likely to arise from the joint representation by Marein & Bradley, LLC of Ms. Ruby Roby and her co-defendant Mr. Jose Roby, the Court rejects Ms. Ruby Roby's conflict-of-interest waiver.

Attorney Michael Marein is hereby disqualified from representing Ms. Roby in these proceedings.

Attorney Marisa Darden is appointed as counsel for Defendant Ruby Roby.[6] Attorney Darden is Criminal Justice Act approved and will serve with no fees or costs assessed to Ms. Roby.

IT IS SO ORDERED.

| | |
|---|---|
| August 14, 2026 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson<br>United States District Judge |

[6] The Court is aware that a member of Attorney Bradley's family is employed at the firm where Attorney Darden works. Attorney Darden has assured the Court that an ethical wall has been erected preventing that counsel from any interactions in these proceedings.